IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BYRON HOLMAN, KAREEM SCOTT-PEDRO;<br><br>Plaintiffs,<br><br>v.<br><br>WARDEN DAVID HOGUE and DEPUTY WARDEN MATTHEW ROOFNER,<br>Defendants. | Civil Action No. 11-1269<br><br>District Judge Joy Flowers Conti<br>Magistrate Judge Cynthia Reed Eddy |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants (ECF. No. 54) be granted.

### II. REPORT

On August 30, 2011, Plaintiffs Byron Holman and Kareem Scott-Pedro initiated this *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 against infringement of the religious freedom rights. The case was referred to then Magistrate Judge Cathy Bissoon. The case was reassigned to me on October 27, 2011 upon the elevation of Cathy Bissoon to the District Court. On March 22, 2012, the Commonwealth Defendants filed a Motion to Dismiss (ECF No. 30) and on April 12, 2012, Plaintiffs filed an Amended Complaint (ECF No. 38).

After allowing a period of discovery, on December 21, 2012, Defendants filed a Motion for Summary Judgment (ECF No. 54), a Brief in Support thereof (ECF No. 55), and a Concise Statement of Material Facts (CSMF) (ECF No. 56). On January 3, 2013, this Court issued an

Order for Plaintiffs to file responses to the pending motion for summary judgment (ECF No. 57). That four-page order specifically informed Plaintiffs that the Local Rules of the United States District Court for the Western District of Pennsylvania require that a party opposing a motion for summary judgment file a responsive "concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by: (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; (b) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety ... with appropriate reference to the record; and (c) setting forth ... any other material facts that are allegedly at issue and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment." L.R. 56.C.1. In addition, that Order clearly stated that, pursuant to our Local Rule 56.E, alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will, for the purpose of deciding the motion for summary judgment, be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

Plaintiff Holman filed a Response to Defendants' Motion on February 3, 2013 (ECF No. 59). However, Plaintiff did not file any concise counter statement of facts; nor did he specifically dispute Defendants' Statement of Facts with any citations to record evidence. Consequently, in accordance with our Local Rules, all factual averments contained in the Defendants' CSMFs will be deemed admitted for purposes of summary judgment. *Accord* Enigh v. Miller, Civil No. 08-1726, 2010 WL 2926213 (W.D. Pa. July 23, 2010) (collecting cases). *See also* Cuevas v. United States, Civil No. 09–43J, 2010 WL 1779690, at * 1 (W.D. Pa. Apr.29,

2010) ("Plaintiff's response to Defendant's Motion does not contain any basis for any ... denial of a fact and also fails to reference the record for each such denial. Though this Court must give certain latitude to a *pro se* litigant, it is not for the Court to sort through the entire record to determine the basis of an alleged disputed fact. As Plaintiff has failed to comply with our local rules, Defendant's Statement of Facts as set forth in [its Concise Statement of Material Facts] are admitted as true and correct.").[1]

## A. Standard of Review

Federal Rule of Civil Procedure 56(a)[2] provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 460–461 (3d Cir. 1989) (the non-movant must present

---

[1] *See also* Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir. 1991) ("While *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer."). In short, a *pro se* litigant's failure to comply with a court order is not the same thing as "inartful pleading or a[ ] lack of legal training." *Id.* at 110.

[2] Pursuant to the 2010 amendments to the Federal Rules of Civil Procedure, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c), with a slight change of wording. Although the word "issue" has been replaced with "dispute," this change does not affect the substantive standard or the applicability of prior decisions construing the standard. *See* Fed. R. Civ. P. 56(a) advisory committee's note.

affirmative evidence -- more than a scintilla but less than a preponderance -- which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest "solely on assertions made in the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. Thus, a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case. *Id.* at 322. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Plaintiff v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Plaintiff, 477 U.S. at 251–52. If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable ... or is not significantly probative," then summary judgment may be granted. *Id.* at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. Celotex, 477 U.S. at 324.

### B. Relevant Material Facts

Plaintiff Holman was incarcerated at the Armstrong County Jail (ACJ) from November 20, 2009 until November 15, 2011. Plaintiff Scott-Pedro Holman was incarcerated at the Armstrong County Jail from August 6, 2010 until January 6, 2012. Commencing in July, 2009, the Pennsylvania Department of Corrections began to house its inmates at the ACJ. Because

4

many of these inmates were Muslim, the jail made arrangement to purchase Korans and such purchases were made. Plaintiff Holman purchased religious materials on December 22, 2009, January 15, 2010, February 18, 2007, and March 5, 2010.

On August 5, 2010 and July 25, 2011, a memo to all staff was sent by Deputy Warden Roofner which set forth procedures for the holiday of Ramadan including the dates of the holiday as well as the meal procedures to be followed for inmate celebrating the holiday.

Due to the shortage of Imams within the geographical area of Armstrong County, the inmates were informed that if they could find a volunteer to come to the jail as other denominations did to conduct services, that request would be accommodated. However, because it was difficult to find an Imam willing to accommodate the policy of the jail as it pertained to payment for services, it was not possible to provide Friday community prayer services to the extent that Plaintiffs requested them.

Policy 2-7 of the Armstrong County Jail sets forth the general policy regarding the rights of inmates to free exercise of religion. That policy mandates that any practice of religion be consistent with prevailing law and the safety and security of the jail. All requests made by the Plaintiffs were evaluated and decisions were made based solely on the basis of the security of the other inmates in the orderly administration of the jail as well as overall security of the jail.

It was determined that the request to be allowed to read the Koran by inmates in the day room could provoke non-Muslim inmates and was not allowed as a matter of security.

Housing assignments are not based upon religious views or beliefs and all such assignments were evaluated and decisions based solely on the basis of the security of other inmates in the orderly administration of the jail as well as the overall security of the jail.

C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). There is no question that the Defendants were acting under color of state law with respect to the actions alleged in the Amended Complaint. Therefore, the issue is whether Plaintiff has alleged a violation of any right under federal law.

Plaintiff asserts that Defendants violated his rights as secured by the First Amendment of the United States Constitution, which provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). *See also* O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). However, in order to state a violation of the right to exercise one's religion, a plaintiff must allege a "substantial burden" on the exercise. *See, e.g.*, Thomas v. Review Bd., 450 U.S. 707, 718 (1981); Wisconsin v. Yoder, 406 U.S. 205, 218 (1972). Moreover, although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quotations omitted). While the federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities. *See, e.g.*, Turner v. Safley, 482 U.S. 78, 84 (1987); Shabazz, 482 U.S. at 353.

The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 699 (1989) (internal citations omitted). The Supreme Court has stated that "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). "The requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice." Gittlemacker v. Prasse, 428 F.2d 1, 4 (3d Cir. 1970).

In the case at bar, Plaintiff merely complains that the ACJ does not provide an Iman for religious services. He does not complain he is not allowed to associate with other Muslims; nor does ne complain that he is not allowed religious texts or other religious items associated with his religion. It is not the responsibility of the prison to provide Plaintiff with access to every religious accommodation he requests. Nor is it the responsibility of a county jail with limited resources to provide services for every faith of every prisoner in its facility. Budgetary

constraints constitute a valid penological interest and restricting religious-based services has been held to be rationally related to that interest. *See* Smith v. Kyler, 295 F. App'x 479, 481 (3d Cir. 2008) ("We agree that Smith's free exercise rights were not violated by the DOC's policy to provide Chaplains for only the largest major faith groups and to prohibit group worship in the absence of an approved, volunteer Faith Group Leader. The District Court correctly noted that the DOC has a legitimate interest in managing limited financial resources and in maintaining prison security."); Boretsky v. Corzine, Civil No. 08- 2265, 2011 WL 2610370, at *13 (D.N.J. June 30, 2011) (holding that a Jewish inmate's restriction from congregational services as well as communal activities did not violate his constitutional rights); Palmer v. Rustin, Civil No. 10-0042, 2011 WL 2489820, at *9 (W.D. Pa. June 21, 2011) (dismissing a claim based on denial of right to attend Muslim services); Gould v. Beard, Civil No. 07-0055, 2010 WL 845566, at *6 (W.D. Pa. Jan. 16, 2010) (holding that a prisoner did not have a right to communal Nation of Islam services); Morris–El v. Menei, Civil No. 00-200J, 2006 WL 1455592, at *2–6 (W.D. Pa. May 22, 2006) (denying claim that failure to provide Moorish Science services violated the inmate's right to Free Exercise). *See also* Williams v. Morton, 343 F.3d 212, 217-18 (3d Cir. 2003) (failure to provide Halal meals to Muslim inmates did not violate their free exercise rights); Fraise v. Terhune, 283 F.3d 506, 517-18 (3d Cir. 2002) (restricting literature of Five percenters did not violate free exercise rights).

Although not cited by Plaintiff in any of his complaints, Defendants further discussed this claim as impacted by the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA prohibits the government from imposing a substantial burden on any religious exercise of a person residing in or confined to an institution unless the burden furthers "a compelling governmental interest," and does so by "the least

restrictive means." *Id. See also* Cutter v. Wilkinson, 544 U.S. 709, 2114 (2005). A plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion. Washington v. Klem, 497 F.3d 272, 278 (3d Cir. 2007). For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. *Id.* at 280. RLUIPA also does not confer any "privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." Cutter, 544 U.S. at 724.

Here, although they were offered the opportunity to do so, Plaintiffs have not alleged any action or regulation of the ACJ which places a substantial burden on the practice of their religion. Accordingly, Plaintiffs' religious claim fails under both the Constitution and RLUIPA. *Accord* Blackwell v. Madison Parish Correctional Center, Civil No. 09-0968, 2010 WL 147987, 6 (W.D. La. Jan. 13, 2010).

### III.  CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants (ECF. No. 54) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

February 15, 2013

*Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Byron Holman
GG3582
SCI Pine Grove
191 Fyock Road
Indiana, PA 15701

Kareem Scott-Pedro
Joseph Coleman Hall
3950 D. Street
Philadelphia, PA 19124